## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRUM & FORSTER SPECIALTY** | : | |
| **INSURANCE COMPANY** | : | |
| | : | |
| **Plaintiff** | : | |
| **v.** | : | |
| | : | **CIVIL ACTION NO.** |
| **DETECT TANK SERVICES, LLC,** | : | |
| 120 N. Abington Rd. | : | |
| Clarks Summit, PA 18411 | : | |
| | : | |
| **MOTT TANK INSPECTION, INC.** | : | |
| 120 N. Abington Rd. | : | |
| Clarks Summit, PA 18411 | : | |
| | : | |
| **ALDEN AYERS,** | : | |
| 22110 Matagorda Dr. | : | |
| Galveston, TX 77554 | : | |
| | : | |
| **DEBORAH AYERS** | : | |
| 22110 Matagorda Dr. | : | |
| Galveston, TX 77554 | : | |
| | : | |
| **JOSEPH KELLY** | : | |
| 206 Glenburn Road | : | |
| Clarks Green, PA 18411 | : | |
| | : | |
| **Defendants** | : | |

## DECLARATORY JUDGMENT COMPLAINT

Plaintiff Crum & Forster Specialty Insurance Company (hereinafter referred to as "CFSIC"), by and through its undersigned counsel, Kelly & DeMarco, P.C., and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 institutes this action for Declaratory Judgment. In support of this action CFSIC avers as follows:

1

**NATURE OF ACTION**

1.      CFSIC files this action seeking declaratory judgment as to its rights and obligations under certain CFSIC insurance policies, in connection with actions filed against Defendants for damages and injuries resulting from the explosion of a gasoline tank at a gas station on July 18, 2018.

2.      CFSIC has been providing a defense to Detect Tank Services, LLC (hereinafter referred to as "Detect") for the actions brought against it. CFSIC seeks a declaration that it has no obligation to defend and/or indemnify any defendant under the terms of the CFSIC policies.

**JURISDICTION AND VENUE**

3.      This Court has federal question jurisdiction over this action as this litigation arises under federal law, namely the Declaratory Judgment Act, 28 U.S.C. § 2201, which confers authority to file a declaratory judgment action in federal court.

4.      The Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because the opposing parties are citizens of different states and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

5.      Venue is properly laid before this Court under 28 U.S.C. §1391(a) and 1391(b) because the underlying lawsuits which gives rise to the coverage dispute between the parties are currently pending in the Philadelphia County Court of Common Pleas, and the incident(s) which led to the aforementioned lawsuit occurred in Bensalem, Pennsylvania.

**THE PARTIES**

6.      Plaintiff Crum & Forster Specialty Insurance Company is incorporated in the state of Delaware, has a statutory office in Delaware and a main administrative office at 305 Madison Ave., Morristown, NJ 07960.

7.      Defendant Detect Tank Services, LLC is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 120 N. Abington Rd., Clarks Summit, PA 18411.

8.      Defendant Mott Tank Inspection, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 120 N. Abington Rd., Clarks Summit, PA 18411.

9.      Defendant Alden Ayers is an adult and a citizen of the state of Texas residing at 22110 Matagorda Dr., Galveston, TX 77554.

10.     Defendant Deborah Ayers is an adult and a citizen of the state of Texas residing at 22110 Matagorda Dr., Galveston, TX 77554.

11.     Defendant Joseph Kelly is an adult and a citizen of the Commonwealth of Pennsylvania residing at 206 Glenburn Rd., Clarks Green, PA 18411

## THE UNDERLYING ACTIONS

12.     Defendants have been named as defendants in two suits filed in the Philadelphia Court of Common Pleas arising from bodily injuries caused in an explosion that took place on June 12, 2018 at a gas station located at 1214 Bristol Pike, Bensalem, PA.

13.     The first suit, Gina Vigilante, Executrix of the Estate of Joseph Vigilante v. Ewing Oil Co., Inc. et al., Court of Common Pleas, Philadelphia County, PA, Case No. 003369, (hereinafter referred to as "Vigilante Complaint") was brought by the Estate of Joseph Vigilante,

the owner of the gas station, who died in the explosion. A copy of the Vigilante Complaint is attached hereto as Ex. A.

14.     The Vigilante Complaint claims that, on the day of the explosion, a fuel delivery filled three gasoline tanks located underground in vaults at the station. It further claims the overfilling of Tank 2 caused the presence of flammable gasoline vapors in Vault 2, undetected by the improperly equipped vault and non-functioning vapor sensors. See Ex. A at ¶ 65.

15.     On that day, after the fuel delivery, Joseph Vigilante and Frank Tomasiello, an employee of Vigilante Enterprises, Inc., entered Vault 2 and proceeded to use a wet/dry vacuum with an extension cord to remove water from the vault. At some point while Mr. Vigilante and Mr. Tomasiello were present in Vault 2, allegedly undetected flammable vapors ignited and caused a massive explosion which killed Mr. Vigilante and caused serious injuries to Mr. Tomasiello.  Id. at ¶¶ 73-81.

16.     The Vigilante Complaint refers to Defendants Detect, Mott Tank Inspection, Inc. ("Mott Tank"), Alden Ayers, Deborah Ayers, and Joseph Kelly collectively as the "Inspection Defendants." Id. at ¶ 23.

17.     The Vigilante Complaint claims that, prior to the explosion, Tank 2 was last inspected on June 9, 2015 by Mott Tank employees Alden Ayers and Joseph Kelly. It is alleged that, during the inspection, the "Inspection Defendants" indicated that there were less than satisfactory aspects uncovered, including the absence of a procedure in place for maintenance of the tanks and vaults and the absence of a spill prevention response plan. Yet, the "Inspection Defendants" allegedly cleared the tanks and vaults to remain in service for ten (10) years after that inspection. Id. at ¶ 51.

18.     There is no allegation in the Vigilante Complaint that Detect ever inspected the tanks at issue. The only allegation made specifically as to Detect is that it "is the successor entity and/or purchased, subsumed, integrated and or is otherwise responsible for the assets and liability of Mott Tank." Id. at ¶¶ 21-22.

19.     In its Answer to the Vigilante Complaint, Detect specifically denied that it ever inspected or visited the premises of the Vigilante gas station. A copy of Detect's Answer to the Vigilante Complaint is attached hereto as Exhibit B. See Ex. B at ¶ 49.

20.     The Vigilante Complaint claims that the "Inspection Defendants'" negligence, carelessness, and recklessness consists of the following:

a.  failure to use due care under the circumstances;

b.  failure to adequately provide for or recommend protective measures in the use of Tank 2 and Vault 2 despite the fact that the vault was noted to be corroded, and did not contain working vapor sensors;

c.  failure to ensure the vapor and liquid sensors were properly installed and functioning;

d.  failure to train the end users on the proper and safe operation, use, and maintenance of the Tank, Vault and its associated sensors and systems;

e.  failure to ensure – with adequate safety materials, manuals, instructions, markings, signs, warnings and safety devices;

f.  otherwise failing to use due care or course under the circumstances when Defendant knew or should have known of the serious and permanent injuries which could be caused by such failure to adequately inspect, defect, breakage or malfunction of said product.

g.  failure to ensure the Tank and Vault were in compliance with all industry codes and regulations, including but not limited to:  the applicable International Fire Code, NFP 30, and others;

h.  failure to ensure a spill prevention response plan was in place;

i.  failure to ensure a maintenance plan was in place;

j.  failure to notify the owners and/or otherwise note in their inspection reports of Tank 2 and Vault 2 about obviously concerning omissions regarding safety plans found during inspections;

k.  failure to notify the owners and/or otherwise note in their inspection reports that the vapor and/or liquid sensors that were missing and/or not functioning properly on Tank 2 and Vault 2;

l.  failure to comply with the various laws, regulations and customs of the industry with regard to safety for such gasoline products including, but not limited to, the law of the United States of America, the Commonwealth of Pennsylvania, and the County of Bucks, Pennsylvania and their applicable regulations;

m.  failure to ensure, notify the owners and/or otherwise note in their inspection reports that the Tank and Vault had properly functioning Vapor Recovery System with a properly functioning emergency vent;

n.  failure to ensure, notify the owners and/or otherwise note in their inspection reports that the Tank and Vault were equipped with, and/or affixed with a functioning liquid sensor and vapor sensor;

o.  failure to note on the inspection report(s) that the vaults and tanks were not outfitted or otherwise equipped with the appropriate and necessary vapor and/or liquid sensors;

p.  failure to note on the inspection report(s) that the vaults and tanks were not outfitted or otherwise equipped with the functioning vapor and/or liquid sensors;

q.  failure inform the owners that the vaults and tanks were not outfitted or otherwise equipped with the appropriate and necessary vapor and/or liquid sensors; and

r.  failure inform the owners that the vaults and tanks were not outfitted or otherwise equipped with the functioning vapor and/or liquid sensors.

See Ex. A at ¶ 160.

21.  The second suit, Frank Tomasiello v. Ewing Oil Co., Inc. et al., Court of Common Pleas, Philadelphia County, PA, Case No. 200202173, (hereinafter referred to as "Tomasiello Complaint") (the Vigilante suit and the Tomasiello suit are collectively referred to herein as "Underlying Actions") was brought by the individual who was injured in the gas tank explosion. A copy of the Tomasiello Complaint is attached hereto as Ex. C.

22.     The Tomasiello suit also names Mott Tank, Alden Ayers, Deborah Ayers, Joseph Kelly and Detect as defendants. See Ex. C.

23.     Like the Vigilante Complaint, the Tomasiello Complaint alleges that Mott Tank and its employees last inspected the storage tanks at the station on June 9, 2015 and cleared them to remain in service for ten years.  See Ex. C at ¶ 62.

24.     The Tomasiello Complaint also does not allege that Detect had any involvement with inspecting the tanks, but simply alleges that Detect is the successor to Mott Tank's liabilities. Id. at ¶ 24.

25.     The Tomasiello Complaint makes identical negligence allegations against the "Inspection Defendants" as the Vigilante Complaint. Id. at ¶ 187.

26.     Detect notified CFSIC of the explosion and a potential for a claim on October 3, 2018.

## DETECT TANK ACQUISITION OF MOTT TANK

27.     Detect purchased all stock of Mott Tank via a Stock Purchase Agreement dated July 21, 2017. The Stock Purchase Agreement did not transfer Mott Tank's liabilities to Detect. A copy of the Stock Purchase Agreement is attached to Detect's Answer to the Vigilante Complaint which is attached hereto as Exhibit B.

## THE CFSIC POLICIES

28.     At the time of the explosion that is the subject of the Vigilante and Tomasiello Complaints, CFSIC had issued Policy EPK-122566 with effective dates of May 26, 2018 to May

26, 2019 ("Primary Policy"). The named insured listed on the Primary Policy is "Detect Tank Services, LLC". A copy of the Primary Policy is attached hereto as Ex. D.

29.     The Primary Policy includes coverage parts for Commercial General Liability ("CGL"), Contractor's Pollution Liability ("CPL") and Errors & Omissions Liability ("E&O"). Ex. D at CFSIC000001.

30.     The "Each Occurrence", "Each Pollution Condition", and "Each Wrongful Act" limit listed on the Primary Policy is $2,000,000, and the Aggregate Limit is $2,000,000. The Deductible is $5,000. Id.

31.     Both the CGL and CPL coverage parts in the Primary Policy exclude coverage for claims arising out of professional services. Per the "Designated Professional Services Endorsement" in the Primary Policy, "professional services" means "those services performed for others by you or on your behalf and designated in the Schedule."  The Schedule defines the Designated "Professional Services" as "Aboveground storage tank testing and inspection". Id. at CFSIC000097.

32.     In the Vigilante Complaint and the Tomasiello Complaint the Plaintiffs' allegations against the Inspection Defendants arise solely from "professional services", namely tank inspections. See Exs. A & C.

33.     Therefore, the claims at issue are specifically excluded from the CGL and CPL coverage in the Primary Policy. See Ex. D at CFSIC 000046, 54-55.

34.     The Insuring Agreement for the Errors & Omissions Liability coverage part does not exclude coverage for "professional services". Id. at CFSIC 000056.

35.     The Insuring Agreement for E&O coverage states that "CFSIC will pay, in excess of the Deductible shown in the Declarations, those sums the insured becomes legally obligated to

pay in relevant part as "damages" because of a "wrongful act" to which this insurance applies."

Id. at CFSIC000056.

36.     The following relevant definitions apply to the E&O coverage part:

"Damages" means the monetary amount of any judgment, award or settlement that an insured becomes legally obligated to pay as a result of a "claim" or "suit". "Damages" does not include "cleanup costs", equitable or non-pecuniary relief, disgorgement of profits, sanctions, fines or penalties.

"Wrongful act" means an act, error or omission in the rendering or failure to render "professional services" by any insured covered under the Insuring Agreement of the Errors and Omissions Liability Coverage Part (EN0025).

Id. at CFSIC000033 & 40.

37.     The Insuring Agreement for E&O coverage part provides coverage for "claims"

for "damages" arising from a "wrongful act" only if the following relevant conditions are met:

(1) Before the "policy period", no insured had knowledge of any "wrongful act" that could reasonably give rise to a "claim" under this Policy.

* * *

(3) No fact, incident, circumstance, transaction, advice or decision involved in the rendering or failure to render "professional services" related to a "wrongful act" was reported as a "claim" or potential "claim" against you under any policy in effect before the "policy period" or was disclosed in the application for this Policy;

(4) The "wrongful act" forming the basis of the "claim" was committed on or after the Retroactive Date shown in the Declarations, and before the end of the "policy period";

* * *

(6) The "claim" for "damages" is first made against any insured and reported to us in accordance with the provisions set forth in Section **VI** - Common Conditions, **5.** Duties In the Event Of A Claim Or Suit within the Common Provisions, during the "policy period" or Extended Reporting Period, if applicable, that we provide under Section **VIII** – Extended Reporting Periods

Id. at CFSIC000056.

38.     The Retroactive Date for the E&O coverage in the Primary Policy is May 26, 2016. Id. at CFSIC000001.

39.     The Primary Policy lists the following condition with respect to the duty in the event a claim:

> **SECTION VI – COMMON CONDITIONS,**
> * * *
> **6. Duties In The Event Of A Potential Claim**
> * * *
> If such notice is received by us during the "policy period", and this Policy has not been renewed upon expiration of the "policy period", then any "claim" made against you after the "policy period" resulting, in relevant part, from that offense or "wrongful act" shall be deemed for the purposes of the . . . Errors & Omissions Liability Coverage Part . . . to have been made on the date such written notice is received by us.

Id. at CFSIC000027.

40.     Because Detect Tank provided notice to CFSIC of the potential claim during the "policy period" and the Primary Policy was not renewed, the "claim" is deemed to have been made on October 3, 2018.

41.     The Primary Policy contains the following description of who is insured:

> **SECTION III – WHO IS AN INSURED**
>
> **1.**     If you are designated in the Declarations as:
>
> > **a.**  an individual, then you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
> >
> > **b.**  a partnership or joint venture, then you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.
> >
> > **c.**  a limited liability company, then you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
> >
> > **d.**  an organization other than a partnership, joint venture or limited liability company, then you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your "executive

officers" or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** a trust, then you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.   However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "bodily injury" or "personal and advertising injury":

**(a)** to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** to the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

**(c)** for which there is any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury described in Paragraphs (1)(a) or (b) above; or

**(d)** arising out of his or her providing or failing to provide professional health care services.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.   However, with respect to such organization:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier;

\* \* \*

11

    **e.**   The Insuring Agreement of the Errors and Omissions Liability Coverage Part does not apply to "bodily injury", "property damage" or "cleanup costs" resulting from a "wrongful act" committed before you acquired or formed the organization;

* * *

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

* * *

Id. at CFSIC000016-18.

    42.   The following endorsements were added to the CFSIC Primary Policy:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Policy Change Number 001

| POLICY NUMBER<br><br>EPK122566 | POLICY CHANGES EFFECTIVE<br><br>10/17/2018 | COMPANY<br><br>**Crum and Forster Specialty Insurance Company** |
|---|---|---|
| NAMED INSURED<br><br>Detect Tank Services, LLC | | |
| COVERAGE PARTS AFFECTED<br><br>        COMMERCIAL GENERAL LIABILITY COVERAGE PART, CONTRACTORS POLLUTION LIABILITY COVERAGE PART, ERRORS AND OMISSIONS LIABILITY COVERAGE PART | | |
| CHANGES <br>In consideration of an additional premium of $250, flat and fully earned, it is hereby agreed and understood that Form EN0166-1017 Named Insured Endorsement is added the policy per the attached.<br><br><br><br>ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED | | |

* * *

# NAMED INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**CONTRACTORS POLLUTION LIABILITY COVERAGE PART**

**ERRORS AND OMISSIONS LIABILITY COVERAGE PART**

**ONSITE CLEANUP COVERAGE PART**

**THIRD PARTY POLLUTION LIABILITY COVERAGE PART**

### SCHEDULE

| Named Insured(s) | Address |
|---|---|
| Detect Tank Services, LLC<br>Mott Tank Inspection Inc. | 201 S. Blakely Street, Ste 344,<br>Dunmore, PA 18512 |

In consideration of the premium charged and solely with respect to the coverage parts shown above, it is hereby agreed that the Named Insured(s) shown in the above Schedule of this endorsement shall be Named Insureds under this policy (collectively referred to as the Named Insured) and shall be treated under this policy as a Named Insured for coverage purposes, subject to all terms, conditions, limits and exclusions of this policy.

By accepting this policy, each Named Insured agrees that:

1. The statements contained the Declarations of this policy are true and accurate;

2. The statements made in the application and any supplemental materials submitted to us are true, accurate and complete, and that such statements and representations are incorporated herein and made part of this policy;

3. Those statements are based upon representations you made to us;

4. We have issued this policy in reliance upon your statements and representations, and such statements and representations are incorporated herein and made a part of this policy;

5. Only the first Named Insured shown in the Declarations of this policy shall have the right and ability to request changes to this policy or the coverage provided therein;

6. The first Named Insured shown in the Declarations of this policy is responsible for the payment of any premium, deductible or self-insured retention amounts; and

7.   The provisions of this policy that by their terms apply only to the first Named Insured shown in the Declarations shall continue to apply to only the first Named Insured shown in the Declarations.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED
Id. at CFSIC000102-103.

43.     CFSIC also issued excess coverage to Detect. Excess Policy EFX-110641 was effective from May 26, 2018 to May 26, 2019 ("Excess Policy") and provides coverage only to the extent that the underlying policies are exhausted by the payments of the applicable limits of insurance.  A copy of the Excess Policy is attached hereto as Exhibit E.

44.     The Excess Policy has an "Each Occurrence" Limit of $5,000,000 and an Aggregate Limit of $5,000,000. See Ex. E at CFSIC000105.

45.     The Excess Insuring Agreement states that the "Agreements, Definitions, Terms, Conditions and Exclusions of the 'controlling underlying insurance'. . . apply to this coverage" and that "[i]f any 'underlying insurance' does not pay a loss for reason other than the exhaustion of an aggregate limit of insurance, then we shall not pay such loss."  The "controlling underlying insurance" is listed as the CFSIC Primary Policy. Id. at CFSIC000132.

46.     The Excess Policy contains a General Change Endorsement identical to the one in the Primary Policy which adds Mott Tank Inspection, Inc. as a Named Insured to the Excess Policy effective October 17, 2018.  Id. at CFSIC 000139-140.

## CLAIM FOR RELIEF

### COUNT I

### Declaratory Judgment
### No Wrongful Act Took Place After the Retroactive Date

47.     CFSIC repeats and re-alleges each and every allegation set forth in paragraphs 1 through 46 and incorporates each and every response as if set forth at length herein.

48.     The Primary Policy excludes bodily injury arising from a "wrongful act" committed prior to the Retroactive Date in the Policy.

49.     The only "wrongful act" alleged against the "Inspection Defendants" in both the Vigilante Complaint and the Tomasiello Complaint is the improper inspection of the tank at the station on June 9, 2015.

50.     The Retroactive Date listed in the Primary Policy and Excess Policy is May 26, 2016.

51.     Because the alleged "wrongful act" was committed prior to the Primary Policy's Retroactive Date there is no coverage for the claims alleged in the Vigilante Complaint and Tomasiello Complaint under the CFSIC Primary Policy and the CFSIC Excess Policy.

52.     Because the Primary Policy does not provide coverage, and the Excess Policy does not pay "[i]f any 'underlying insurance' does not pay a loss for reason other than the exhaustion of an aggregate limit of insurance", there is no coverage for the bodily injuries alleged in the Vigilante Complaint and Tomasiello Complaint under the Excess Policy.

WHEREFORE, Crum & Forster Specialty Insurance Company respectfully requests that judgment be entered in its favor and against the Defendants and further requests that the Court declare that Crum & Forster Specialty Insurance Company has no duty to defend or indemnify Detect Tank Services, LLC, Mott Tank Inspection, Inc., Alden Ayers, Deborah Ayers and Joseph Kelly in the Underlying Actions under Primary Policy EPK-122566 and Excess Policy EFX-

15

110641 issued by Crum & Forster Specialty Insurance Company, and requests such further and

other relief that the court deems just and appropriate.

## COUNT II

### Declaratory Judgment
### No Coverage for Wrongful Act Prior to Detect's Acquisition of Mott Tank

53.     CFSIC repeats and re-alleges each and every allegation set forth in paragraphs 1

through 52 and incorporates each and every response as if set forth at length herein.

54.     Pursuant to the provisions in the Primary Policy regarding who is an insured

quoted above, there is no coverage for bodily injury resulting from a "wrongful act" committed

before Detect acquired any organization.

55.     The bodily injury alleged in the Vigilante Complaint and Tomasiello Complaint

resulted solely from a "wrongful act" committed, if at all, by Mott Tank on June 9, 2015, prior to

it being acquired by Detect on July 21, 2017.

56.     Therefore, the Primary Policy does not provide coverage for the bodily injuries

alleged in the Vigilante Complaint and Tomasiello Complaint.

57.     Because the Primary Policy does not provide coverage, and the Excess Policy

does not pay "[i]f any 'underlying insurance' does not pay a loss for reason other than the

exhaustion of an aggregate limit of insurance", there is no coverage for the bodily injuries

alleged in the Vigilante Complaint and Tomasiello Complaint under the Excess Policy.

WHEREFORE, Crum & Forster Specialty Insurance Company respectfully requests that

judgment be entered in its favor and against the Defendants and further requests that the Court

declare that Crum & Forster Specialty Insurance Company has no duty to defend or indemnify

Detect Tank Services, LLC, Mott Tank Inspection, Inc., Alden Ayers, Deborah Ayers and Joseph

Kelly in the Underlying Actions under Primary Policy EPK-122566 and Excess Policy EFX-

110641 issued by Crum & Forster Specialty Insurance Company, and requests such further and

other relief that the court deems just and appropriate.

## COUNT III

### Declaratory Judgment
### Mott Tank and its employees are not an Insured

58.     CFSIC repeats and re-alleges each and every allegation set forth in paragraphs 1

through 57 and incorporates each and every response as if set forth at length herein.

59.     The General Change Endorsements in the Primary Policy and the Excess Policy

which list Mott Tank Inspection, Inc. as a Named Insured have an effective date of October 17,

2018.

60.     The claim was deemed made when Detect notified CFSIC of the explosion and

potential claim on October 3, 2018.

61.     Because the endorsements which add Mott Tank as a Named Insured under the

Primary Policy and Excess Policy became effective after the claim was made, there is no

coverage for Mott Tank or its employees Alden Ayers, Deborah Ayers and Joseph Kelly for the

Underlying Actions.

WHEREFORE, Crum & Forster Specialty Insurance Company respectfully requests that

judgment be entered in its favor and against the Defendants and further requests that the Court

declare that, in the event that coverage is afforded to Detect Tank, LLC for the Underlying

Actions, Crum & Forster Specialty Insurance Company has no duty to defend or indemnify Mott

Tank Inspection, Inc., Alden Ayers, Deborah Ayers and Joseph Kelly in the Underlying Actions

under Primary Policy EPK-122566 and Excess Policy EFX-110641 issued by Crum & Forster

Specialty Insurance Company, and requests such further and other relief that the court deems just

and appropriate.


                                   **KELLY & DeMARCO, P.C.**

                           **BY:**   **s/Carolyn Bates Kelly**
                                   **CAROLYN BATES KELLY**
                                   **PA Attorney ID 75668**
                                   **Attorney for Plaintiff,**
                                   **Crum & Forster Specialty Insurance Company**
                                   **101 Greenwood Avenue, Suite 300**
                                   **Jenkintown, PA 19046**
                                   **215-881-2280**
**Dated: February 10, 2022**           **cbkelly@kellydemarco.com**

## VERIFICATION

I, _Agnes Ruis_, hereby verify that I am an authorized representative of

United States Fire Insurance Company, which is the authorized claim administrator for the

Crum & Forster Specialty Insurance Company policy at issue, and that the averments or denials

of fact made in the attached Complaint are true and correct to the best of my knowledge,

information and belief.  I understand that any false statements herein are made subject to the

penalties of 18 Pa. C. S. §4904 relating to unsworn falsifications to authorities.


_Agnes Ruis_


Dated: _2/9/2022_