IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY, <br><br> *Plaintiff,* <br><br> v. <br><br> DETECT TANK SERVICES, LLC, MOTT TANK INSPECTION, INC., ALDEN AYERS, and DEBORAH AYERS, <br><br> *Defendants.* | CIVIL ACTION <br> NO. 22-542 |

**PAPPERT, J.**                                                                                     March 21, 2023

### MEMORANDUM

Crum & Forster Specialty Insurance Company ("CFSIC") seeks a declaration that it has no obligation to defend or indemnify Detect Tank Services, LLC, Mott Tank Inspection, Inc., Alden Ayers and Deborah Ayers in two state-court lawsuits (the "underlying actions") alleging negligence leading to the explosion of a gasoline tank that resulted in the death of one person and serious injuries to another. Detect and Mott asserted counterclaims asking the Court to find that CFSIC must continue to defend them in the underlying actions and contending that CFSIC acted in bad faith by now disclaiming such a duty. CFSIC moves for judgment on the pleadings while Detect and Mott seek partial judgment on the pleadings. The Court grants CFSIC's motion, denies Detect and Mott's, and enters judgment in favor of CFSIC.

I

On June 12, 2018, three gasoline tanks, each located in a separate underground vault at Joseph Vigilante's gas station in Bensalem, Pennsylvania, were filled during a

scheduled fuel delivery. (Second Am. Compl. ¶¶ 11–13, ECF 23.) Tank 2 was allegedly overfilled during the delivery, which caused flammable gasoline vapors to accumulate in Vault 2. (*Id.*) The vapors purportedly went undetected due to non-functioning vapor sensors in the vault. (*Id.*) After the fuel delivery, Vigilante and employee Frank Tomasiello went into Vault 2 to remove water with a vacuum powered by an extension cord. (*Id.* ¶ 14.) While they were in the vault, the flammable vapors ignited, causing an explosion that killed Vigilante and seriously injured Tomasiello. (*Id.*)

Gina Vigilante—the executrix of Joseph Vigilante's estate—sued, among others, Detect Tank, Mott Tank and Mott employees Alden Ayers, Deborah Ayers, and Joseph Kelly[1] (collectively the "Inspection Defendants") in the Philadelphia County Court of Common Pleas. (*Id.* ¶ 15.) Tomasiello separately sued the same Defendants in Common Pleas court as well. (*Id.* ¶¶ 20–21.) Vigilante and Tomasiello both allege that on June 9, 2015, Alden Ayers and Joseph Kelly inspected the tanks at Vigilante's gas station and cleared them to remain in service for an additional ten years, despite finding the tanks were in "less than satisfactory" condition, with no existing maintenance procedures or spill prevention plan. (*Id.* ¶¶ 16, 22.) The June 9, 2015 inspection was the last before the explosion. (*Id.* ¶ 16.) Detect purchased Mott in a July 21, 2017 Stock Purchase Agreement, pursuant to which Detect did not assume Mott's liabilities. (*Id.* ¶ 26.) Vigilante and Tomasiello do not allege that Detect had any involvement with the tank's inspection, but do contend Detect is responsible for Mott's liabilities. (*Id.* ¶¶ 17, 23.)

---

[1] While Kelly is a named party in the underlying actions, CFSIC did not include him in either of its amended complaints in this case.

When the tank exploded, Detect was insured under CFSIC Primary Policy EPK-122566, which was effective from May 26, 2018 to May 26, 2019. (*Id.* ¶ 27; Primary Policy at CFSIC000001.)[2] The Primary Policy provided coverage for Commercial General Liability ("CGL"), Contractor's Pollution Liability ("CPL"), and Errors & Omissions Liability ("E&O"). (Second Am. Compl. ¶ 28, ECF 23.) The CGL and CPL exclude coverage for any claims arising out of "professional services," which are defined through a Schedule as "Aboveground storage tank testing and inspection." (Primary Policy at CFSIC000046, 000054–55, 000097, ECF 28-11.)[3] E&O insures against liabilities caused by any "wrongful act,"[4] but only if the insured had no knowledge of the wrongful act prior to the policy period and it was committed on or after a May 26, 2016 Retroactive Date. (Second Am. Compl. ¶¶ 33, 36–37; Primary Policy at CFSIC000056.)

The Primary Policy also conditions coverage on the insured's compliance with certain duties, including the duty to report the claim to CFSIC in accordance with the reporting provisions. Detect reported the claim on October 3, 2018. *See* (Second Am. Compl. ¶¶ 25, 39, ECF 23). Mott was added as a named insured to the Primary Policy, effective October 17, 2018, fourteen days after the claim was filed with CFSIC. (*Id.* ¶ 41.) CFSIC also issued Excess Policy EFX-110641 to Detect with the same May 26,

---

[2] The citations are to the page numbers of the Primary Policy attached as Exhibit H to Plaintiff's Motion, while the Excess Policy is attached as Exhibit I. (ECF 28-11).

[3] In the Designated Professional Services Endorsement, "professional services" are defined as "those services performed for others by you or on your behalf and designated in the Schedule shown above." Primary Policy at CFSIC000097. The Schedule defines "professional services" as "Aboveground storage tank testing and inspection," and Pennsylvania regulations include in the definition of "aboveground storage tanks" any tank that can be visually inspected in an underground area, which includes tanks located in underground vaults. *See* 25 Pa. Code Sec. 245.1.

[4] A "wrongful act" is defined as "an act, error or omission in the rendering or failure to render 'professional services' by any insured covered under the Insuring Agreement of the Errors and Omissions Liability Coverage Part (EN0025)." (Primary Policy at CFSIC000040.)

2018 to May 26, 2019 policy period. (*Id.* ¶ 42; Excess Policy at CFSIC000105.) The Excess Policy does not apply unless there is coverage under the Primary Policy. (Second Am. Compl. ¶ 44; Excess Policy at CFSIC000115.)

II

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The pleadings are closed after an answer is filed and after a reply is filed to any additional claims asserted in the answer. *Austin Powder Co. v. Knorr Contracting, Inc.*, No. 08-1428, 2009 WL 773695, at *1 (M.D. Pa. Mar. 20, 2009). Under Rule 12(c), a judgment on the pleadings will be granted "only if, viewing all the facts in the light most favorable to the nonmoving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012); *see also Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). In deciding a Rule 12(c) motion, the "court may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (citations and internal quotations omitted).

III

Under Pennsylvania law, insurance policies are contracts between insurer and policyholder. *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020). Their proper interpretation is a question of law for courts to decide. *Sikirica*, 416 F.3d at 220. In doing so, the court must "effectuate the intent of the contracting parties as reflected by

the written language of the insurance policies." *Kurach*, 235 A.3d at 1116. Where the terms of the policy are unambiguous, courts will give them their plain and ordinary meaning, unless doing so would violate clearly established public policy. *Id.* Where they are ambiguous, they must be construed in favor of the policyholder. *Id.*

An insurer's duty to defend and indemnify an insured in a suit brought by a third party "is triggered by the language of the complaint against the insured." *See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006). In a declaratory judgment action, the court must determine the scope of the policy's coverage, and if the underlying complaint against the insured alleges facts that could support a recovery under the policy. *Gen. Acc. Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997). The facts in the underlying complaint are taken as true and liberally construed in favor of the insured. *See Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).

A duty to defend arises if there's "any possibility that [a policy's] coverage has been triggered by allegations in the underlying complaint. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 674 (3d Cir. 2016) (citing *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.,* 2 A.3d 526, 541 (Pa. 2010). If the underlying complaint triggers a duty to defend, then the insurer must defend "until such time that the claim is confined to a recovery that the policy does not cover." *Allen*, 692 A.2d at 1095. Although the duty to defend is separate from and broader than the duty to indemnify, both duties are determined by assessing whether the underlying complaint triggers coverage. *Id.* Because the duty to defend is broader than the duty to indemnify, a finding that the insurer has no duty to defend will necessitate a finding that it also has no duty to

indemnify. *See Kvaerner Metals*, 908 A.2d at 896 n.7. Finally, the insured bears the initial burden to show that its claims are "within the policy's affirmative grant of coverage." *Sciolla v. W. Bend Mut. Ins. Co.*, 987 F. Supp. 2d 594, 599 (E.D. Pa. 2013) (quoting *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996)). Meanwhile, the insurer must establish the applicability of policy exclusions, which are strictly construed against the insurer and in favor of the insured. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 207 (3d Cir. 2001).

## IV

### A

CFSIC argues it has no duty to defend or indemnify the Defendants in the underlying actions because there is no possibility of coverage under the Primary Policy for the following four reasons: The professional services exclusions bar CGL and CPL coverage; bodily injury arising from a wrongful act committed prior the Retroactive Date is excluded from E&O coverage; Mott's inspection of the tank occurred prior to Detect's acquisition of the company; and there is no coverage for Mott and its employees because Detect notified CFSIC of its claim prior to Mott being added as a named insured on the Policy. (Pl.'s Br. Supp. Mot. J. Pleadings 15–17, ECF 28-3.)

Although Defendants agree that allegations arising from professional services are excluded from CGL and CPL coverage, they claim the underlying actions allege violations of an ongoing duty of care that are not directly related to the tank's inspection and therefore are not barred by the professional services exclusions. (Defs.' Br. Opp. Pl.'s Mot. J. Pleadings 5–6, ECF 30; Primary Policy at CFSIC000046, 000054–55.) They also claim that because this purported breach was continuous, it occurred

after the E&O Retroactive Date and the date Detect acquired Mott. (Defs.' Br. Opp. Pls.' Mot. J. Pleadings 5–7, ECF 30). They do not address CFSIC's argument that there is no coverage for Mott and its employees because the claim was made prior to the addition of Mott as a named insured.[5]

B

None of the underlying actions' claims are potentially within any aspect of the Primary Policy's coverage. Every allegation pertaining to the Inspection Defendants arises out of the June 9, 2015 tank inspection and are subject to the CGL and CPL professional services exclusions. *See* (Primary Policy at CFSIC000046, 000054–55, 000097). Although Defendants claim there are allegations in the underlying complaints unrelated to the rendering of professional services, each allegation arises from the inspection of the tank and the Defendants' determination that it was fit for service.

Similarly, no E&O coverage exists because plaintiffs in the underlying actions do not allege a wrongful event took place after the Retroactive Date. (Primary Policy at CFSIC000001.) Defendants cite to paragraphs 160 and 161 of the Vigilante Complaint[6] (ECF 23-1), and emphasize the eighteen allegations in subparagraphs 160a through 160r as evidence of allegations that the Inspection Defendants had an ongoing duty to

---

[5] Defendants' failure to do so concedes CFSIC's argument. *See, e.g., Hausknecht v. John Hancock Life Ins. Co. of New York*, 334 F. Supp. 3d 665, 682 (E.D. Pa. 2018) ("Plaintiffs respond only selectively" and "[b]y failing to respond to . . . Defendant's arguments, Plaintiffs have conceded them."); *Celestial Cmty. Dev. Corp. v. City of Phila.*, 901 F. Supp.2d 566, 578 (E.D. Pa. 2012) ("To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested."); *Cook v. W. Homestead Police Dep't*, 2017 WL 1550190, at *3 (W.D. Pa. May 1, 2017) ("Plaintiffs' failure to respond at all to [Defendants] arguments for dismissal . . . will be read as a concession of those arguments, if not a waiver of those issues.")

[6] Because the allegations in the underlying complaints contain identical claims against the Inspection Defendants, a discussion of only one of the underlying complaints is necessary.

monitor the tanks and provide safety information. (Defs.' Br. Supp. Mot. Partial J. Pleadings 15, ECF 27-1; Defs.' Br. Supp. Mot. Partial J. Pleadings 4, ECF 27-1.) Defendants argue these duties continued until the date of the explosion, and violations of the duties were wrongful acts that occurred after the Retroactive Date and Detect's acquisition of Mott. (Def.'s Br. Opp. Pl.'s Mot. J. Pleadings 6, ECF 30.)

Under the Primary Policy, E&O coverage exists only if the "'wrongful act' forming the basis of the 'claim' was committed on or after the Retroactive Date." (Primary Policy at CFSIC000056.) The underlying complaints allege no "act, error or omission in the rendering or failure to render 'professional services'" after the Retroactive Date. (Primary Policy at CFSIC000040.) Contrary to what the Defendants now claim, there are no allegations in the underlying actions that the Inspection Defendants had an ongoing duty to update the owners on the state of the tank after their inspection and report. Reading the complaint broadly, all alleged negligent acts by the Inspection Defendants—including those in paragraph 160 of the Vigilante complaint—relate to their inspection and report that the tank was fit for service. There is no allegation of a wrongful act occurring beyond the inspection and report, let alone one occurring beyond the Retroactive Date—which was almost a year after the inspection. Because the only "wrongful act" alleged against the Inspection Defendants occurred on June 9, 2015, prior to the Retroactive Date of May 26, 2016, there is no E&O coverage.

None of the claims in the underlying actions are potentially within the Primary Policy's coverage and CFSIC has no duty to defend Detect, Mott or the individual defendants in those cases. Absent a duty to defend there can be no duty to indemnify.

V

Defendants claim CFSIC is estopped from denying a duty to defend because it failed to properly communicate a reservation of rights. *See* (Defs.' Br. Supp. Mot. Partial J. Pleadings 2, 12–14, ECF 27-1). CFSIC claims it properly reserved its rights and that Defendants have failed to meet the standard to assert an estoppel defense. (Pl.'s Br. Opp. Defs.' Mot. J. Pleadings 7–8, ECF 29.)

Under Pennsylvania law, the burden rests on the party asserting estoppel to establish the defense by "clear, precise and unequivocal evidence." *Chrysler Credit Corp. v. First Nat. Bank and Trust Co.,* 746 F.2d 200, 206 (3d Cir. 1984) (citing *Blofsen v. Cutaiar,* 333 A.2d 841, 844 (Pa. 1975). Estoppel requires a party to show that they were induced to believe certain facts, they justifiably relied on that inducement, and they were prejudiced due to that reliance. *See Nationwide Prop. & Cas. Ins. Co. v. Shearer*, No. 14-735, 2015 WL 1186008, at *8 (W.D. Pa. Mar. 13, 2015), *aff'd sub nom. Nationwide Prop. & Cas. Ins. Co v. Shearer*, 650 F. App'x 115 (3d Cir. 2016); *see also Sabino v. Junio,* 272 A.2d 508 (Pa. 1971). There must be "actual prejudice," as when "a failure to assert all possible defenses causes the insured to act to his detriment in reliance thereon." *Mendel v. Home Ins. Co.*, 806 F. Supp. 1206, 1215 (E.D. Pa. 1992); *see also Shearer,* 2015 WL 1186008 at *8 ("To establish estoppel in the insurance context, there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon") (internal quotations omitted).

Defendants rely on *Selective Way Ins. Co. v. MAK Servs., Inc.*, where the Superior Court of Pennsylvania held that a general reservation of rights that "provided

9

no notice whatsoever of the existing coverage issue" was insufficient to properly reserve the insurer's rights to disclaim coverage after the insurer had assumed the defense of the case. *See* 232 A.3d 762, 769–70 (Pa. Super. Ct. 2020). The court held that any "review of the Policy would have immediately revealed the existence of [the] exclusion" the insurer later sought to invoke, and that "the boilerplate language relied upon by Selective Way obfuscated this absolute defense to coverage, and caused MAK Services to reach the reasonable conclusion there was no pressing need to secure back-up counsel." *Id.* at 770.

This case is very different. Unlike the sparse reservation of rights in *Selective Way*, CFSIC sent Detect three detailed letters. The letter pertaining to the Vigilante lawsuit was sent less than two months after the first amended complaint was filed in that case and the first of two letters regarding the Tomasiello lawsuit was sent to Detect roughly one month after Tomasiello filed his complaint.[7] Unlike *Selective Way*, CFSIC's reservation of rights did not "obfuscate" defenses to coverage. For example, in the June 9 letter concerning the Vigilante case, in addition to disclaiming CGL and CPL coverage due to the professional services exclusions, CFSIC told Detect:

> [T]he 2018 Primary Policy contains a May 26, 2016 Retroactive Date. To the extent any "wrongful act" forming the basis of the "claim" was committed prior to the E&O Retroactive Date of May 26, 2016, including the June 9, 2015 inspection alleged in the First Amended Complaint, there would be no coverage for that "wrongful act." CFSIC reserves the right to disclaim coverage on this basis.

---

[7] The Executrix of Joseph Vigilante's estate filed a complaint against the policyholders on February 26, 2020, and a first amended complaint on April 13, 2020. CFSIC sent Detect a reservation of rights letter pertaining to the Vigilante case on June 9, 2020. Frank Tomasiello filed his complaint on June 11, 2020. CFSIC sent its first reservation of rights letter to Detect regarding this case on July 23, 2020, and a second letter on August 11, 2020.

(Pl.'s Answer and Affirmative Defenses to Defs.' Counterclaim, Ex. A, June 9, 2020 Letter at 7, ECF 25-1). Similarly, the July 23 reservation of rights letter in the Tomasiello lawsuit stated that "CFSIC disclaims defense and indemnity coverage . . . under the CGL and CPL coverages," as well as E&O coverage if it was determined that the wrongful act forming the basis of the underlying claims occurred prior to the E&O Retroactive Date. (*Id.*, Ex. A, July 23, 2020 Letter at 5, 7, ECF 25-1). In the second letter concerning the Tomasiello case sent to Detect on August 11, CFSIC also wrote:

> [N]either Mott Tank nor any of its employees or officers are insured under the CFSIC Primary and Excess Policy for the Tomasiello Claim. To the extent that it is determined that the bodily injury alleged in the Tomasiello Complaint resulted from a "wrongful act" committed by Mott Tank and/or its employees or officers prior to it being acquired by Detect Tank, there would be no coverage for Detect Tank for that liability. CFSIC reserves the right to seek a determination as to when the "wrongful act," if any, was committed.

(*Id.*, Ex. A, August 11, 2020 Letter at 7, ECF 25-1). CFSIC's reservation of rights letters outlined—with sufficient specificity—the arguments it now makes in seeking declaratory judgment. *See Erie Ins. Exch. v. Lobenthal*, 114 A.3d 832, 837 (Pa. Super. Ct. 2015) (A reservation of rights letter "must fairly inform the insured of the insurer's position and must be timely") (quoting *Brugnoli v. United Nat. Ins. Co.,* 426 A.2d 164, 167 (Pa. Super. Ct. 1981). In its June, July, and August letters, CFSIC informed Defendants of the exact coverage issues and defenses it now presents to the Court, and reserved its rights to further disclaim coverage, to contest any purported obligation to defend and indemnify Detect, to seek a declaratory judgment to determine the existence of coverage, and to withdraw from the defense if it was determined there was no coverage under the Primary Policy. (Pl.'s Answer and Affirmative Defenses to Defs.' Counterclaim, Ex. A, June 9, 2020 Letter at 5, ECF 25-1.) CFSIC undertook Detect's

defense subject to a full reservation of rights while timely informing it of potential reasons to deny coverage. Defendants have not shown clear, precise and unequivocal evidence of prejudice, so CFSIC is not estopped from denying a duty to defend.

## VI

Defendants also seek a declaration that CFSIC's filing of this action constitutes bad faith. (Defs.' Counterclaims ¶¶ 53–56, ECF 24.) A bad faith claim under Pennsylvania law requires a showing that "the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004). Because there is no coverage under the Primary Policy, CFSIC had a reasonable basis to seek a declaratory judgment. *See Westminster Am. Ins. Co. v. Sec. Nat'l Ins. Co.*, 555 F. Supp. 3d 75, 88 (E.D. Pa. 2021); *see also Neshaminy Constructors, Inc. v. Fed. Ins. Co.*, No. 11-7168, 2012 WL 2362577, at *4 (E.D. Pa. June 21, 2012) ("Because there is no coverage . . . there can be no bad faith."); *Cay Divers, Inc. v. Raven*, 812 F.2d 866, 871 (3d Cir. 1987) ("In general, an insurer's seeking of a declaratory judgment on potential coverage and on the duty to defend dependent thereon before the trial on the main action does not support a charge of bad faith.")

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.